[Cite as *State ex rel. Heineman v. Stucki*, 2019-Ohio-2665.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. SEAN HEINEMAN, | : | **PER CURIAM OPINION** |
| | : | |
| Relator, | : | **CASE NO. 2018-G-0178** |
| | : | |
| - vs - | : | |
| | : | |
| HON. DAVID E. STUCKI, | : | |
| Respondent. | : | |

Original Action for Writ of Prohibition.

Judgment: Writ denied.

*Paul W. Flowers* and *Louis Everett Grube*, Paul W. Flowers Co., L.P.A., Terminal Tower, Suite 1910, 50 Public Square, Cleveland, OH 44113; *Anne S. Magyaros*, The Gallery Building, 516 East Washington Street, Chagrin Falls, OH 44022 (For Relator).

*James R. Flaiz*, Geauga County Prosecutor, and *Linda Applebaum*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, 3rd Floor, Chardon, OH 44024 (For Respondent).

PER CURIAM.

{¶1}   Relator, Sean Heineman, seeks a writ of prohibition preventing respondent, Hon. David E. Stucki ("Judge Stucki") of the Geauga County Court of Common Pleas, Juvenile Division, from continuing to exercise judicial authority over the proceedings in case No. 17 JF 000071.  Heineman asserts that Judge Stucki lacks jurisdiction over the action because notices of voluntary dismissal were filed in accordance with Civ.R. 41(A).

Before this court are the parties' competing motions for summary judgment. We conclude summary judgment in favor of Judge Stucki is warranted as a matter of law.

## Procedural History

**{¶2}** Heineman was married to Nika McNulty until their divorce in 2013. During the marriage, they had three children together—M.H., L.H., and C.H.—all of whom are still minors. Thereafter, Heineman became incarcerated, and McNulty had custody of the children.

**{¶3}** On April 17, 2017, Geauga County Job and Family Services ("GCJFS") filed a complaint in the Juvenile Division of the Geauga County Court of Common Pleas ("Juvenile Court"), pursuant to R.C. 2151.27, alleging the children were dependent. The complaint was assigned case No. 17 JF 000071.

**{¶4}** On May 8, 2017, three matters came before the Juvenile Court. (1) Heineman filed his own R.C. 2151.27 complaint, under the same case number, alleging the children were abused, neglected, or dependent.[1] (2) Heineman's mother, Cheryl Heineman ("Paternal Grandmother"), moved to interplead and moved for emergency temporary custody of the children. (3) GCJFS moved to dismiss its complaint and requested the court return the children to McNulty.

**{¶5}** On May 16, 2017, the Juvenile Court issued a judgment entry, in which it entered the following "interim orders": (1) GCJFS's motion to dismiss its dependency complaint was granted; (2) emergency temporary custody of M.H. and L.H. was granted to Paternal Grandmother; (3) custody of C.H. was returned to McNulty; (4) McNulty was granted supervised visitation with M.H. and L.H.; (5) GCJFS was made a party to the

---

1. It is Judge Stucki's position in this original action that service of Heineman's complaint was never perfected.

proceedings, pursuant to Juv.R. 2, and was granted protective supervision of all three children; (6) Heineman was granted supervised telephonic and personal visitations with the children as permitted by the correctional institution; (7) a hearing was scheduled on Heineman's complaint and Paternal Grandmother's motions.

{¶6} The Juvenile Court issued another judgment entry, on July 11, 2017, in which it stated that "this case has evolved into a private custody dispute between the paternal grandmother and mother." It therefore dismissed GCJFS as a party to the proceedings. In the interest of complete impartiality due to an allegation made by McNulty, the judge also recused himself from the matter, stating "all pending motions will be heard by the successor judge in this case." Finally, the entry ordered that "[a]ll prior orders shall remain in full force and effect."

{¶7} Thereafter, Judge Stucki was assigned to preside over the proceedings.

{¶8} On June 1, 2018, McNulty filed a motion for a subpoena to be issued to the Ohio Department of Rehabilitation and Corrections ("ODRC") to produce recordings of certain nonprivileged telephone calls placed by Heineman from July 11, 2017, through the date of the motion.

{¶9} GCJFS filed a case plan regarding the children on August 23, 2018.

{¶10} On August 31, 2018, McNulty moved to dismiss Heineman's complaint and Paternal Grandmother's motions on the basis that the juvenile proceedings had turned into "a custody dispute between two formerly married parents and jurisdiction over the children herein does not belong in the Juvenile Court, absent a finding of dependency,

3

abuse or neglect or facts equivalent to those standards that would indicate [McNulty] was unsuitable pursuant to *In re Perales*, 52 Ohio St.2d 89 (1977)."[2]

{¶11} Despite having moved to dismiss the proceedings, McNulty filed several motions on September 6, 2018. McNulty filed an ex parte motion to suspend prison visitation between the children and Heineman and a motion for a ruling on her previous motion for a subpoena to be issued to ODRC regarding Heineman's prison telephone records. McNulty also moved the Juvenile Court to order Heineman and Paternal Grandmother to show cause why they should not be held in contempt of court and for an award of attorney fees.

{¶12} The following day, September 7, 2018, Paternal Grandmother filed a "Notice of Dismissal Civ.R. 41(A)," stating she "hereby dismisses her Complaint and all of her other pending motions in this case, without prejudice, at her cost." Heineman also filed a "Notice of Dismissal," stating he "dismisses his Complaint and all of his other pending motions in this case, without prejudice pursuant to Rule 41(A) of the Ohio Rules of Civil Procedure."

{¶13} Judge Stucki issued a judgment entry on September 19, 2018, in which he (1) overruled McNulty's motion to dismiss as moot, due to the voluntary dismissals filed by Heineman and Paternal Grandmother; (2) granted McNulty's motion to suspend Heineman's prison visitation with the children; (3) granted McNulty's motion for a subpoena to issue to ODRC for Heineman's telephone records; and (4) set a hearing on

---

2. The syllabus of *In re Perales*, 52 Ohio St.2d 89 (1977) provides: "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."

McNulty's motions to show cause and for attorney fees against Heineman and Paternal Grandmother.

**{¶14}** No adjudicatory hearing was ever held, and no finding was ever entered that the children were abused, neglected, or dependent. However, the children apparently remained placed in temporary custody under the Juvenile Court's May 16, 2017 interim order.

### Original Action

**{¶15}** On October 3, 2018, Heineman filed a verified complaint for writ of prohibition, requesting this court issue a writ prohibiting Judge Stucki from continuing to exercise judicial authority over the juvenile proceedings, as all of the claims had been voluntary dismissed by the parties pursuant to Civ.R. 41(A). Contemporaneously, Heineman filed an emergency motion to stay all proceedings pending before Judge Stucki, including any further discovery, and to suspend the orders that Judge Stucki issued following the voluntary dismissal of all claims by the parties. Judge Stucki responded in opposition to the emergency motion for stay, arguing it would be against the children's best interests and that Heineman failed to demonstrate exigent circumstances or irreparable harm.

**{¶16}** The ODRC had already produced copies of Heineman's telephone records and provided them to McNulty, a non-party to this original action. Thus, with regard to Heineman's request to stay the subpoena issued to the ODRC, we found we could not grant him relief. We also denied his request to stay Judge Stucki's order as it pertained to visitation and contact with the children. We issued a limited, temporary stay of all discovery in the juvenile court until the parties could further brief the legal issues involved in the original action before this court.

5

{¶17} On November 5, 2018, Judge Stucki answered the complaint, in which he asserted Heineman has an adequate legal remedy by way of appeal. Judge Stucki contemporaneously filed a motion for summary judgment, in which he raises two alternative arguments as to why Heineman cannot succeed as a matter of law:

> A. Because Heineman's dependency complaint was never commenced, and the Juvenile Court retained jurisdiction to proceed on all pending motions, after dismissing GCJFS as a party, Judge Stucki had jurisdiction, regardless of Heineman's and [Paternal] Grandmother's dismissal of their actions.
>
> B. Even if Heineman's complaint was perfected (it was not), because Respondent Judge David Stucki's ("Stucki's") orders at issue, including the granting of a motion to suspend prison visits and to issue subpoenas to ODRC, addressed matters in motions prior to the dismissals, unrelated to the merits of Relator Heineman's abuse, neglect, and dependency case, Stucki had authority to act. Thus, since Heineman has numerous adequate remedies at law, his writ should be denied.

{¶18} Judge Stucki attached copies of the following evidentiary materials to his motion for summary judgment: (a) the juvenile court's docket, sworn in counsel's affidavit to be a "true and accurate" copy; (b) Heineman's private complaint, alleging the children were abused, neglected, and dependent; (c) the juvenile court's May 16, 2017 judgment entry, in which, inter alia, it granted GCJFS's motion to dismiss its complaint; (d) the juvenile court's July 11, 2017 judgment entry, in which, inter alia, it dismissed GCJFS as a party to the proceedings; (e) McNulty's motions and affidavits filed September 6, 2018; (f) Judge Stucki's September 19, 2018 judgment entry, granting McNulty's various motions and overruling McNulty's motion to dismiss as moot due to the voluntary dismissal notices.

{¶19} Heineman responded to the motion for summary judgment and filed a cross-motion for summary judgment on January 25, 2019. Heineman asserts "the undisputed

6

facts show that the abuse, neglect, and dependency proceedings before the Juvenile Court were conclusively nullified and terminated prior to issuance of the orders that are the subject of this original action." Thus, he argues he is entitled to judgment as a matter of law because (1) a court does not retain jurisdiction to decide motions after every complaint and complainant has been dismissed, and (2) a court may not make rulings on the merits of a claim after every complaint and complainant has been dismissed.

{¶20} Although granted an extension of time, Judge Stucki did not respond to Heineman's cross-motion for summary judgment.

## Summary Judgment Standard

{¶21} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Indus., Inc.*, 66 Ohio St.3d 64, 66 (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See, e.g.*, Civ.R. 56(C)." *DeFranco v. Judy*, 11th Dist. Geauga Nos. 2012-G-3114 & 2013-G-3135, 2014-Ohio-8, ¶10.

{¶22} "In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at ¶11, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Moreover, when the respondent has moved for summary judgment, the relator's failure to create a genuine issue of material fact as to any element of his claim is sufficient to warrant final judgment in the respondent's favor. *Salloum v. Falkowski*, 11th Dist. Lake No. 2015-L-124, 2016-Ohio-

7

5005, ¶13, citing *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, ¶34 (10th Dist.2002).

## Writ of Prohibition

{¶23} "A writ of prohibition is an extraordinary remedy that is granted in limited circumstances with great caution and restraint." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001), citing *State ex rel. Henry v. Britt*, 67 Ohio St.2d 71, 73 (1981). "Proceedings on a petition for a writ of prohibition test the subject-matter jurisdiction of the lower court. Thus, a writ of prohibition prevents an inferior court from exceeding its jurisdiction." *Id.*, citing *State ex rel. Barton v. Butler Cty. Bd. of Elections*, 39 Ohio St.3d 291 (1988).

{¶24} To be entitled to the writ, the relator must satisfy three elements: (1) a lower court or judicial officer is preparing to exercise its judicial power in a pending case; (2) the proposed use of that power is not authorized under the law; and (3) there is no alternative legal remedy the relator could invoke to obtain the same result. *Id.*; *see also State ex rel. Walton v. Williams*, 145 Ohio St.3d 469, 2016-Ohio-1054, ¶13.

{¶25} "[T]his court has emphasized that the absence of an adequate legal remedy is not necessary when the lack of judicial authority to act is patent and unambiguous, i.e., if the lack of jurisdiction is clear, the writ will lie upon proof of the first two elements only." *State ex rel. Godale v. Geauga Cty. Ct. of Common Pleas*, 166 Ohio App.3d 851, 2006-Ohio-2500, ¶6 (11th Dist.), citing *State ex rel. Biros v. Logan*, 11th Dist. Trumbull No. 2003-T-0016, 2003-Ohio-5425, ¶11.

{¶26} When a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition will issue to prevent any future unauthorized exercise of jurisdiction. *Walton*, *supra*, at ¶14 (citations omitted); *see also State ex rel. V.K.B. v.*

8

*Smith*, 142 Ohio St.3d 469, 2015-Ohio-2004, ¶8. "However, if the lack of jurisdiction is not patent and unambiguous, the fact that a party can appeal a lower court's decision bars the issuance of the writ because, when a court has general jurisdiction over the subject matter of a case, it has the inherent authority to decide whether that jurisdiction has been properly invoked in a specific instance." *Godale*, *supra*, at ¶6, citing *State ex rel. Hummel v. Sadler*, 96 Ohio St.3d 84, 2002-Ohio-3605, ¶21.

{¶27} In reviewing whether a purported jurisdictional defect is "patent and unambiguous," this court has adopted the following standard:

> '[I]f there are no set of facts under which a trial court or judge could have jurisdiction over a particular case, the alleged jurisdictional defect will always be considered patent and unambiguous. On the other hand, if the court or judge generally has subject matter jurisdiction over the type of case in question and his authority to hear that specific action will depend on the specific facts before him, the jurisdictional defect is not obvious and the court/judge should be allowed to decide the jurisdictional issue.'

*State ex rel. Tucker v. Grendell*, 11th Dist. Geauga No. 2012-G-3125, 2013-Ohio-539, ¶9, quoting *State ex rel. The Leatherworks Partnership v. Stuard*, 11th Dist. Trumbull No. 2002-T-0017, 2002-Ohio-6477, ¶19, citing *State ex rel. Lee v. Trumbull Cty. Probate Court*, 11th Dist. Trumbull No. 97-T-0150, 1999 WL 744032 (Sept. 17, 1999).

**Legal Analysis**

{¶28} It is undisputed that Judge Stucki has exercised and continues to exercise judicial authority in the juvenile proceedings.

{¶29} "Ohio's juvenile courts are statutory courts, created by the General Assembly. As a statutory court, the juvenile court has limited jurisdiction, and it can exercise only the authority conferred upon it by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶14, citing R.C. Chapter 2151; *State v. Wilson*, 73 Ohio

9

St.3d 40, 43 (1995); and *State ex rel. Ramey v. Davis*, 119 Ohio St. 596 (1929), paragraph four of the syllabus.

{¶30} Pursuant to R.C. 2151.23(A)(1), juvenile courts have exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint, indictment, or information is alleged * * * to be [an] * * * abused, neglected, or dependent child[.]" Thus, the filing of the complaint by GCJFS, alleging the children to be dependent, and giving notice to Heineman and McNulty invoked the juvenile court's jurisdiction over the adjudication of dependency. *In re Doolan*, 8th Dist. Cuyahoga Nos. 64945 & 64946, 1994 WL 77787, *2 (Mar. 10, 1994), citing *State ex rel. Clark v. Allaman*, 87 Ohio App. 101 (2d Dist.1950). The filing of Heineman's complaint, assuming service was perfected, also invoked the juvenile court's jurisdiction over the adjudication of abuse, neglect, or dependency.

{¶31} Juvenile courts also have exclusive original jurisdiction, pursuant to R.C. 2151.23(A)(2), "to determine the custody of any child not a ward of another court of this state." This includes custodial claims brought by persons considered nonparents at law, such as Paternal Grandmother in this case. *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶14, quoting *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, ¶43.

{¶32} "Pending hearing on a complaint, the court may make such temporary orders concerning the custody or care of a child who is the subject of the complaint as the child's interest and welfare may require." Juv.R. 13(A). Also, "pending hearing on a complaint, the judge or magistrate may issue temporary orders with respect to the relations and conduct of other persons toward a child who is the subject of the complaint as the child's interest and welfare may require." Juv.R. 13(B)(1). "Upon the filing of an

10

abuse, neglect, or dependency complaint, any party may by motion request that the court issue any of the following temporary orders to protect the best interest of the child:

> (a) An order granting temporary custody of the child to a particular party;
>
> (b) An order for the taking of the child into custody pending the outcome of the adjudicatory and dispositional hearings;
>
> (c) An order granting, limiting, or eliminating visitation rights with respect to the child;
>
> * * *
>
> (g) Any other order that restrains or otherwise controls the conduct of any party which conduct would not be in the best interest of the child.

Juv.R. 13(B)(2). "The orders permitted by division (B)(2) of this rule may be granted ex parte if it appears that the best interest and welfare of the child require immediate issuance." Juv.R. 13(B)(3).

{¶33} "The Ohio Supreme Court has clarified that the juvenile court operates pursuant to its exclusive original jurisdiction when it holds an adjudicatory hearing, and, if it adjudicates the child abused, neglected, or dependent, when it issues its initial dispositional order pursuant to Revised Code Section 2151.353(A)." *In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175, ¶10, citing *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶21. "Those dispositions include protective supervision, temporary custody, legal custody, permanent custody, planned permanent living arrangement, and removing the child from the home and issuing a no contact order." *Id.*, citing R.C. 2151.353(A)(1)-(6). "Thereafter, the juvenile court's exclusive jurisdiction terminates and it continues to address ongoing issues in the case pursuant to its exercise of 'continuing jurisdiction over the child.'" *Id.*,

11

quoting *Allen Cty. Children Servs. Bd.*, *supra*, at ¶23.  "Furthermore, Revised Code Section 2151.353(F)(1) provides in relevant part: 'The [juvenile] court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen years * * *.'  Only age or adoption terminates the continuing jurisdiction of the juvenile court."  *Id.*

{¶34} The question here is whether the juvenile court retained continuing jurisdiction—after Paternal Grandmother's motion requesting temporary custody and each complaint alleging abuse, neglect, or dependency was voluntarily dismissed—to issue or enforce temporary orders concerning the custody or care of the children or with respect to the relations and conduct of the parties toward the children.

{¶35} "In general, when a trial court unconditionally dismisses a case or a case has been voluntarily dismissed under Civ.R. 41(A)(1), the trial court patently and unambiguously lacks jurisdiction to proceed, and a writ of prohibition will issue to prevent the exercise of jurisdiction."  *Walton*, *supra*, at ¶16, citing *Hummel*, *supra*, at ¶22, citing *Page v. Riley,* 85 Ohio St.3d 621, 623 (1999).  "There are exceptions to this general rule. Despite a voluntary dismissal, the trial court may consider certain collateral issues not related to the merits of the action, such as contempt and other sanctions."  *Id.* at ¶16, fn. 1, citing *Hummel*, *supra*, at ¶23.

{¶36} For example, in *Hummel*, following plaintiffs' Civ.R. 41(A) voluntary dismissal, the court of common pleas granted a motion for sanctions, imposing monetary sanctions on defendant's counsel.  *Hummel*, *supra*, at ¶8-10.  The court of appeals vacated the judgment due to the trial court's failure to consider objections to a magistrate's decision.  *Id.* at ¶11.  Following remand, defendant and counsel sought a writ of prohibition or mandamus to prevent the trial court from exercising any jurisdiction in the underlying

12

case, including ruling on the motion for sanctions. *Id.* at ¶13. The court of appeals dismissed the writ action for failure to state a claim because relators had an adequate remedy at law in which to raise their claims. *Id.* at ¶14. The Supreme Court of Ohio affirmed this decision, holding that the trial court did not patently and unambiguously lack jurisdiction to rule on the motion for sanctions, despite the Civ.R. 41(A) voluntary dismissal, because it was a collateral issue not related to the merits of the underlying action. *Id.* at ¶23-26.

{¶37} Likewise, here, the Juvenile Court does not patently and unambiguously lack jurisdiction to proceed with certain collateral issues that are unrelated to the merits of the voluntarily dismissed complaints, to wit: the temporary custody and other interim orders relating to the care of the three minor children. In its May 16, 2017 entry, the Juvenile Court stated the temporary custody orders were "interim orders" that were made "pending further hearing." In its July 11, 2017 entry, which dismissed GCJFS as a party, the Juvenile Court indicated "[a]ll prior orders remain in full force and effect."

{¶38} Heineman has not put forth evidentiary material establishing that these "interim orders" regarding temporary custody have been revised. While there is no longer an abuse, neglect, or dependency case pending, there is certainly the critical collateral matter of ongoing custody of these children that must be addressed with some degree of permanency. The Juvenile Court does not patently and unambiguously lack jurisdiction to resolve this issue and, until then, to issue orders in the best interest of the children. Once resolved, Heineman has an adequate remedy by way of appeal. Accordingly, Judge Stucki is entitled to judgment as a matter of law.

{¶39} Judge Stucki's motion for summary judgment is hereby granted. Heineman's cross-motion for summary judgment is hereby overruled. Final judgment is rendered in favor of Judge Stucki as to Heineman's prohibition claim.

{¶40} Writ denied.

THOMAS R. WRIGHT, P.J., CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur.